IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| DENNIS KISSMAN, *et al.*,                )<br>                                                    )<br>                    **Plaintiffs,**         )<br>                                                    )<br>                    v.                           )<br>                                                    )<br>KOSEI OHNO, *et al.*,                     )<br>                                                    )<br>                    **Defendants.**        )<br>                                                    ) | Case No. 3:18-cv-0018 |

ATTORNEYS:

> Lee J. Rohn, Esq.
> Rhea Lawrence, Esq.
> Adam N. Marinelli, Esq.
> A.J. Stone III, Esq.

**MEMORANDUM OPNION**

**ROBERT A. MOLLOY, Chief Judge.**

**BEFORE THE COURT** is Defendants St. Thomas Marina Corporation and Kosei Ohno's motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and for *forum non conveniens* pursuant to Federal Rules of Civil Procedure 12(b)(3). (ECF No. 31.) Defendants also argue, alternatively, that this matter should be transferred to another venue. For the reasons stated below, the Court will deny the motion.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

Because the parties are intimately familiar with the background of this case, the Court will recite only those facts necessary for a disposition of the motion.

### a.  Parties[1]

Plaintiffs/Counter Defendants are Dennis Kissman ("Dennis"), and Marina Management Services, Inc. ("MMS") (collectively "Plaintiffs"). Defendants are St. Thomas Marina Corporation ("St. Thomas Marina") and Kosei Ohno ("Ohno") (collectively

---

[1] Because some of the parties share the same last name, the Court will refer to these individuals by their first name for ease of reference and to avoid confusion.

*Kissman, et al.  v. Ohno, et al.*
Case No. 3:18-cv-0018
Memorandum Opinion
Page 2 of 17

"Defendants"). Crown Bay Marina L.P. ("CBM") is named as a nominal defendant and is the counterclaimant.

Nancy Kissman ("Nancy") (collectively, with Dennis, the "Kissmans"), Jane Wherren ("Wherren"), and Marina Staffing, Inc. ("MSI") were joined as counter defendants.

### b. Complaint

On February 2, 1998, Dennis, Ohno, and St. Thomas Marina formed CBM, a limited partnership, pursuant to a partnership agreement ("Partnership Agreement")[2]. (ECF 1-1 at ¶¶ 2-9.) Ohno is the principal owner of St. Thomas Marina, which, in turn, is CBM's general partner and is generally responsible for the management of CBM's affairs. *Id.* at ¶ 5. Dennis and Ohno are both limited partners. *Id.* at ¶¶ 2, 7.

CBM executed an agreement with MMS, under which MMS was to run the Crown Bay Marina (the "Marina"), a marina located at Crown Bay on St. Thomas. *Id.* at ¶¶ 10. CBM and MMS executed a contract to that effect (the "management contract"), under which MMS ran the Marina for several years. *Id.* at ¶¶ 10-11.

Plaintiffs allege that as a result of St. Thomas Marina's actions as general partner between 1998 and 2017, CBM suffered significant financial losses. *Id.* at ¶¶ 22-25. Plaintiffs further allege that St. Thomas Marina, at Ohno's instruction, failed to adequately insure the marina prior to 2017 by choosing to self-insure the marina then failing to sufficiently establish a self-insurance fund. *Id.* at ¶¶26-27, 56, 60.

In September 2017, Hurricanes Irma and Maria caused severe damage to the infrastructure of the Virgin Islands, including the facilities at the marina. *See id.* at ¶ 38-52. Plaintiffs allege that thereafter, in October 2017, St. Thomas Marina, through Ohno, improperly terminated the management contract with MMS. *Id.* at ¶¶ 19-74. Plaintiffs allege that the termination letter contained various false allegations against MMS, including allegations of improper management of the marina in the years leading up to and during the hurricanes. *Id.* at ¶¶ 74-75. Plaintiffs further allege that Ohno refused to pay MMS employees Nancy and Briquell Morales ("Morales") who were "loaned to [the Marina] to do payroll and bookkeeping and accounting." *Id.* at ¶78. Plaintiffs allege that Ohno also improperly

---

[2] (ECF No. 1-2.)

*Kissman, et al. v. Ohno, et al.*
Case No. 3:18-cv-0018
Memorandum Opinion
Page 3 of 17

terminated Wherren, an MMS employee, who served as the Director of Operations for the marina. *Id.* at ¶¶ 31, 72.

Finally, Plaintiffs allege Ohno, personally and on behalf of the General Partner, made statements inferring that Dennis and MMS were writing unauthorized checks and depositing funds to which they were not entitled*. Id.* at ¶ 83. Plaintiffs allege that these statements were published to Matthew Duensing, the marina's legal counsel, and Nancy. *Id.* at ¶¶ 83-84. Plaintiffs further allege St. Thomas Marina and Ohno repeatedly claimed that Dennis has "mental issues, is incompetent, may have Alzheimer's or dementia and other false statements about the mental condition of [Dennis]." *Id.* at ¶ 96.

On February 22, 2018, Dennis and MMS filed a six-count complaint in the Superior Court of the Virgin Islands against St. Thomas Marina and Ohno, and against CBM as a nominal defendant. *Id.* The complaint asserts claims for tortious interference with contractual relations (Count I), breach of contract (Count II), improper exercise of the Partnership Agreement's call option (Count III), and defamation (Count V). *Id.* at ¶¶ 91-116. The complaint also asserts that Dennis is entitled to full access to all financial records of CBM (Count IV). *Id.* Finally, Dennis asserts a derivative claim on behalf of CBM[3] (Count VI). *Id.* On March 29, 2018, Ohno and St. Thomas Marina removed the action to this Court pursuant to 28 U.S.C. § 1332.[4]

---

[3] CBM was named as a nominal defendant. Generally, a "nominal defendant is 'not a real party in interest because he has no legitimate claim to the disputed property.'" *Sherman v. SEC*, 658 F.3d 1009, 1012 (9th Cir. 2011) (quoting *SEC v. Ross*, 504 F.3d 1130, 1141 (9th Cir. 2007)). The Complaint asserts that CBM is a nominal defendant because its "interests are in issue." (ECF No. 1-1 at ¶ 8.) The Court has some concerns as to whether CBM is not a real party in interest. These concerns raise questions as to whether there is diversity of citizenship amongst the parties as a limited partnership is a citizen – for diversity purposes – of all of its partners. The Court recognizes and acknowledge that these issues were addressed by the undersigned's predecessor. Nonetheless, this issue may be revisited at a later time.

[4] There appears to be some dispute as to the citizenship of the parties. In the original complaint, Plaintiffs assert that Dennis is a citizen of St. Thomas, St. Thomas Marina is a Delaware Corporation, and MMS is a Florida Corporation with its principal place of business on St. Thomas. (ECF No. 1-1 at ¶¶ 1-6). Ohno's citizenship is not specified, although he is listed as residing on St. Thomas. The amended complaint, which was denied, alleges that Dennis is a citizen of Florida, Ohno is a citizen of the Virgin Islands, and St. Thomas Marina is a citizen of Delaware. In their motion to dismiss, ECF No. 31, Defendants assert that Dennis is citizen of Florida, MMS is a Florida corporation, Ohno is a citizen of Washington, and St. Thomas Marina is a Delaware Corporation with its principal place of business in Washington. (ECF No. 32 at 2-3.)

On May 31, 2018, Dennis and MMS filed a motion to amend and remand the complaint. (ECF No. 6.) The proposed amended complaint sought to add CBM as a "real party in interest." *Id.* at 2. Plaintiffs also argued that because diversity would be destroyed as a result of the amendment, the case should be remanded to the Superior Court. *Id.* The Court denied this motion on March 30, 2019. (ECF No. 21.)

### c. Counterclaims

On September 5, 2019, nominal defendant CBM filed its answer and counterclaims. (ECF No. 46.) In the answer, CBM asserts claims for breach of contract, breach of duty of good faith and fair dealing, fraud, unjust enrichment, intentional tort and negligence. *Id.* at 26-30.

CBM specifically alleges that, from 2013 to 2017, Dennis and MMS improperly used CBM funds to pay salaries for and provide life and health insurance benefits to Nancy and Morales, who were not CBM employees. *Id.* at 17. CBM further alleges that Dennis and MMS used CBM funds to finance MMS business expenses and for various personal expenses for the Kissmans and Wherren. *Id.* at 18-19. CBM also alleges that, as a result of the management of the marina by MMS and Dennis during and after the hurricanes in 2017, the marina was severely damaged and suffered economic harm. *See id.* at 19-26.

On July 1, 2020, CBM moved join as counter defendants Nancy, Wherren, and Marina Staffing, Inc. ("MSI") — a company created by the principals of MMS to manage payroll for the marina's employees. (ECF No. 128.)

The instant motion before the Court is Defendants motion to dismiss for lack of subject matter jurisdiction, *Forum Non Conveniens*, and for transfer of venue. (ECF Nos. 31, 32.) In their motion, Defendants argue that the Court lacks subject matter jurisdiction over the claims that fall under the Delaware Uniform Limited Partnership Act, Counts III, IV, and VI, (Collectively the "Delaware Law Claims") as the language within the act expressly confers "exclusive jurisdiction" on the Delaware Court of Chancery. *Id.* at 5. Defendants further argue that even if the Court of Chancery does not have exclusive jurisdiction, the parties consented to Delaware as the default forum by agreeing to be governed by Delaware law. *Id.* at 9.

Defendants argue that dismissal under *forum non conveniens* is appropriate because Delaware is an adequate forum and public interest supports having Delaware courts decided

claims pursuant to Delaware law. *Id.* at 12-13. Finally, Defendants argue that transfer under 21 U.S.C. § 1404(a) is appropriate because Delaware is a proper forum, Plaintiffs' choice of forum should be given little weight because neither are Virgin Islands citizens, and Defendants choice of forum should be given considerable weight because St. Thomas Marina is domiciled in Delaware and several claims are under Delaware law. *Id.* at 15. Defendants argue that with regard to the claims that do not fall under Delaware law, the events that gave rise to the claims occurred in the States of Washington and Florida, not in the Virgin Islands. *Id.* at 15-16. Finally, Defendants argue that it is no less convenient for the parties to litigate in Delaware than in the Virgin Islands because no party is a citizen of the Virgin Islands.

## II.    DISCUSSION

### A.  Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) governs motion to dismiss for lack of subject-matter jurisdiction. A Rule 12(b)(1) motion may be treated as either a facial or a factual challenge to a court's subject-matter jurisdiction. See *Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). In considering a facial challenge to subject-matter jurisdiction under Rule 12(b)(1), all material allegations in the complaint are taken as true. Id. at 189-92; *see also Taliaferro v. Darby Township. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (explaining that standard for facial attacks under Rule 12(b) is "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court"). A factual challenge, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (alterations omitted) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

Where a motion to dismiss factually challenges the district court's jurisdiction, the court is not confined to the allegations in the complaint, but can consider other evidence, such as affidavits, depositions, and testimony, to resolve factual issues related to jurisdiction. *See Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (stating that because at issue is the very power of the trial court to hear the case, a court is free to weigh

evidence beyond the allegations in the complaint). Furthermore, "no presumptive truthfulness attaches to plaintiff's allegations" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* Defendants assert that the motion is a factual challenge to subject matter jurisdiction. However, the motion was filed prior to any responsive documents, and there is no indication that discovery had commenced at this point. Therefore, the Court will treat this motion as a facial attack to subject matter jurisdiction.

Defendants first argue that the language that of the Delaware Revised Uniform Limited Partnership Act (the "LP Act") confers exclusive jurisdiction on the Delaware Court of Chancery for certain claims arising under Delaware law, and, thus, only the Court of Chancery has subject matter jurisdiction over The Delaware Law Claims. With regard to Count IV, in which Plaintiffs seek access to CBM's financial records (the "Books and Records Claim"), Defendants first cite Section 17-305 of the LP Act as applicable law. Section 17-305 provides, in relevant part: "[a]ny action to enforce any right arising under this section shall be brought in the Court of Chancery . . .. The Court of Chancery is hereby vested with *exclusive jurisdiction* to determine whether or not the person seeking such information is entitled to the information sought." Del. Code tit. 6, § 17-305 (emphasis added). Similarly, albeit more permissive, language of the LP Act covers Count III, which asserts the improper removal of a limited partner (the "Improper Removal Claim")[5], and Count VI, which asserts a derivative claim on behalf of CBM (the "Derivative Claim").[6]

"Subject matter jurisdiction defines the court's authority to hear a given type of case." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639, 129 S. Ct. 1862, 173 L. Ed. 2d 843 (2009) (quoting *United States v. Morton*, 467 U.S. 822, 828, 104  (1984)). Although federal courts are courts of limited jurisdiction, "[i]t is axiomatic that, because federal subject matter jurisdiction can be conferred or withdrawn only by Congress, a federal court must look only to federal, not state, law to determine whether that jurisdiction exists, even when the

---

[5] The statute provides: "Upon application of any partner, the Court of Chancery may hear and determine the validity of any admission, election, appointment or removal or other withdrawal of a general partner of a limited partnership . . .." Del. Code tit. 6, § 17-110.

[6] "A limited partner or an assignee of a partnership interest may bring an action in the Court of Chancery in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed." Del. Code tit. 6, § 17-1001.

substantive right at issue is a creature of state law." *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1109 (3d Cir. 1995) (Nygaard, J., concurring). Simply put, "state substantive law cannot deprive a federal court of its diversity jurisdiction."[7] *Id.*; *see also Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 333-34 (9th Cir. 2015); *Truck Components v. Beatrice Co.*, 143 F.3d 1057, 1061-62 (7th Cir. 1998).

Under 28 U.S.C. § 1332, "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." *Id.* At this time, the parties do not dispute diversity of citizenship,[8] nor do they dispute that the amount in controversy has been satisfied. Therefore, pursuant to 28 U.S.C. § 1332, at this time and based on the record before it, the Court finds that it has subject matter jurisdiction over the Delaware Law Claims. Accordingly, the Court need not inquire further into the language of the Delaware statute, because a state imposed jurisdictional bar cannot supplant a Congressional grant of jurisdiction.[9]

Next, Defendants argue that the Partnership Agreement requires that claims that are brought pursuant to agreement are brought in the Court of Chancery. Defendants cite to Section 9.3 of the agreement which provides:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware. In particular, the Partnership is formed pursuant to the [Delaware Revised Limited Partnership] Act, and the rights and liabilities of the Partners shall be as provided therein, except as herein otherwise expressly provided.

---

[7] As Defendants rightfully note, select district courts have reached the opposite conclusion. *See Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 402-03 (S.D.N.Y. 2013), *and Yale South Corp. v. Eclipse Services, Inc.*, No. 10-337, 2010 U.S. Dist. LEXIS 72467, 2010 WL 2854687 at **3-4 (N.D. Okla. July 19, 2010. However, the courts that have held that the LP Act restricts subject matter jurisdiction to the Court of Chancery rely on a plain language interpretation of the LP Act. As discussed above, regardless of the plain language of the LP Act, a state may not restrict the jurisdiction of federal courts. Therefore, the Court is not persuaded by such reasoning.

[8] This issue, however, may be revisited at a later date.

[9] Furthermore, the Court of Chancery has clarified that the Delaware legislature never intended to deprive any out of state courts of jurisdiction, stating that "[w]hen a Delaware state statute assigns exclusive jurisdiction to a particular Delaware court, the statute is allocating jurisdiction among the Delaware courts. The state is not making a claim against the world that no court outside of Delaware can exercise jurisdiction over that type of case*." IMO Daniel Kloiber Dynasty Tr.,* 98 A.3d 924, 939 (Del. Ch. 2014).

Defendants assert that because the parties agreed to be governed by Delaware law and did not explicitly agree upon an alternate forum, they agreed to Delaware as the exclusive forum for claims brought under the Partnership Agreement. Therefore, Defendants argue, the Partnership Agreement itself divests the Court of subject matter jurisdiction.

Defendants cite to *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286 (Del. 1999), to support this assertion. In *Elf*, the Delaware Supreme Court discussed the meaning of the jurisdictional language in the Delaware Limited Liability Company Act, closely modeled after the LP Act,[10] explaining that: "[i]n vesting the Court of Chancery with jurisdiction, the Act . . . established the Court of Chancery as the default forum in the event the members did not provide another choice of forum or dispute resolution mechanism . . .." *Id.* at 296.

Defendants argue that, in the absence of contractual language that expressly provides otherwise, an agreement governed by Delaware law implicitly removes claims that fall under these provisions of the LP Act from the jurisdiction of any court besides the Court of Chancery unless otherwise specified. This finding would have the effect of vesting Delaware courts with exclusive jurisdiction. However, as discussed above, such an outcome is out of step with prevailing law. *MCI Telecomms. Corp.*, 71 F.3d 1109 ("That a state simply has no power to divest a federal court of its congressionally conferred subject matter jurisdiction, has been settled law for nearly a century.") (collecting cases).

Whether explicitly or implicitly, it is simply not possible for the LP Act to divest this Court of jurisdiction that it has been duly afforded by Congress. *Accord Health Robotics, LLC v. Bennett*, No. 09-cv-0627, 2009 U.S. Dist. LEXIS 119945, at *30 (E.D. Pa. Dec. 22, 2009)("Any discussion of a 'default' forum or a court with 'exclusive' jurisdiction in *Elf Atochem* and *Grace* addresses only the relationship between these two separate state courts, and does not address the ability of these claims to be brought in federal court if the requirements of 28 U.S.C. § 1332 are met."). Therefore, the Court concludes that it has subject matter jurisdiction over the Delaware Law Claims.

---

[10] "The Delaware Act has been modeled on the popular Delaware LP Act. In fact, its architecture and much of its wording is almost identical to that of the Delaware LP Act. Under the Act, a member of an LLC is treated much like a limited partner under the LP Act." *Id.* at 290.

### B.  Forum Non Conveniens

Defendants next argue in the alternative to dismiss on the grounds of *forum non conveniens.* A court may dismiss a case under the doctrine of *forum non conveniens* where: "(1) an alternative forum has jurisdiction to hear the case; and (2) when trial in the plaintiff's chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to the plaintiff's convenience, or when the chosen forum is inappropriate due to the court's own administrative and legal problems." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160 (3d Cir. 2010).

> [W]hen considering a motion to dismiss on *forum non conveniens* grounds, a district court must first determine whether an adequate alternate forum can entertain the case. If an adequate alternative forum exists, the district court must determine next the appropriate amount of deference to be given the plaintiff's choice of forum. After the district court has determined the amount of deference due to the plaintiff's choice of forum, the district court must balance the relevant public and private interest factors. If the balance of these factors indicates that trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience, the district court may, in its discretion, dismiss the case on *forum non conveniens* grounds.

*Id.* at 160 (quoting *Windt v. Qwest Comms. Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008)) (internal quotations omitted). Thus, in determining whether to dismiss a case for *forum non conveniens* the Court must undertake a three-step inquiry: "[t]he Court must (1) determine whether there is an adequate alternative forum; (2) determine the appropriate level of deference to give the plaintiff's choice of forum; and (3) balance the relevant public and private interest factors." *Trotter v. 7R Holdings*, LLC, No. 2014-99, 2016 U.S. Dist. LEXIS 42680, at *4 (D.V.I. Mar. 30, 2016) (citing *Eurofins Pharma*, 623 F.3d at 160). Such analyses should reflect a ""range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007)(citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996)). However, "dismissal for *forum non conveniens* is the exception rather than the rule," and "the defendant bears the burden of persuasion on all elements of the *forum non conveniens* analysis." *Lony*, 935 F.2d at 609.The Court will consider each factor in turn.

### 1. *Adequate Alternate Forum*

First, the Court must determine whether there is an adequate alternative forum in which to bring the claims. Generally, an adequate alternative forum exists where the "defendants are amenable to process and [the] plaintiffs' claims are cognizable" in the other jurisdiction. *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013). "[I]n rare circumstances, . . . where the remedy offered by the other forum is clearly *unsatisfactory*, the other forum may not be an adequate alternative. *Eurofins Pharma*, 623 F.3d at 161 (citing *Piper*, 454 U.S. at 255 n.22)(emphasis omitted).

Here the Court finds that Delaware is an adequate alternative forum for the Delaware Law Claims. Defendants are clearly amenable to service there, as evidenced by the instant motion. The claims are necessarily brought pursuant to Delaware law and so are cognizable in Delaware courts. Furthermore, neither party has argued that the available remedies would differ between the two fora. Accordingly, Delaware is an adequate alternative forum for these claims.

### 2. *Deference Given to Plaintiff's Choice of Forum*

Generally, where the district court has jurisdiction, a plaintiff's choice of forum "is normally due considerable deference" and "should rarely be disturbed." *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 608-09 (3d Cir. 1991) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241(1981))(internal quotations omitted). However, it is not entitled to "dispositive weight." *Id.* at 225. For example, "the presumption in the plaintiff's favor applies with less force," when the chosen forum is not plaintiff's home forum. *Sinochem*, 549 U.S. at 430. Conversely, several courts in this circuit have declined to exercise jurisdiction over cases when the operative facts giving rise to the claim predominantly occurred outside of the forum, even when the plaintiff has chosen their home forum. *See Jayaram Chigurupati v. Daiichi Sankyo Co.*, No.: 10- 5495 (PGS), 2011 U.S. Dist. LEXIS 87432, at *13 (D.N.J. Aug. 8, 2011); *Doe v. Ritz Carlton Hotel Co., LLC*, No. 14-4423, 2015 U.S. Dist. LEXIS 4799, at *14 (E.D. Pa. Jan. 14, 2015) (noting that "deference is somewhat diminished where, as here, none of the operative facts occurred in plaintiff's chosen forum").

Defendants argue that Plaintiffs' choice of forum should be given little weight because no party is a citizen of the Virgin Islands, and that there is no connection between the Delaware Law Claims and the Virgin Islands. Defendants' assert that Count III, which alleges that the LP agreement's call option was improperly executed, involves a single email neither sent from nor received in the Virgin Islands. (ECF No. 40 at 5.) Defendants further assert that Plaintiffs list no "factual allegations relevant to [Counts IV or VI] that would suggest that [their] choice of the Virgin Islands is entitled to any deference," and that there is "simply no connection between the Delaware Law Claims and the Virgin Islands." (ECF No. 40 at 6.)

Plaintiffs counter that Counts IV and VI are demonstrably connected to the Virgin Islands. In Count IV, Plaintiffs demand access to all full financial records of CBM. Plaintiffs assert that the banking and financial records related to CBM and the equipment used to store said records are located in the Virgin Islands. (ECF No 38. At 16.) With regard to Count VI, which asserts a derivative action on behalf of CBM, Plaintiffs demand that St. Thomas Marina be removed as General Partner of CBM and that Plaintiffs be awarded damages for losses suffered due to St. Thomas Marina's "gross negligence and willful misconduct." (ECF No. 1-1 at ¶¶ 117-122).

According to the complaint, CBM conducted business in the Virgin Islands for two decades. It is logical to expect records regarding this business to be stored, at least in part, in the Virgin Islands. Furthermore, three of the Counts asserted by Plaintiffs allegedly occurred in the Virgin Islands, in part or in whole. Because a significant portion of the operative facts underlying two of the Delaware Law Claims arose in the Virgin Islands, the Court finds that Plaintiffs' choice of forum should be afforded the presumed deference.

### 3.  Public and Private Interests

The Court next turns to balance the private and public interest factors which affect the convenience of the parties. Private interest factors for the district court to consider include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Kissman, et al.  v. Ohno, et al.*
Case No. 3:18-cv-0018
Memorandum Opinion
Page 12 of 17

*Eurofins*, 623 F.3d at 161 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  Likewise, public interest factors include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* at 162 (citing *Piper Aircraft,* 454 U.S. at 241 n.6).

Defendants argue that there is no connection between the Virgin Islands and the Delaware Law Claims, therefore no private or public interest factors weigh in favor of the Virgin Islands. Defendants further argue that private factors favor Delaware because there are no obstacles that would prevent the parties from trying the case in Delaware.[11]

Plaintiffs argue that their sources of proof, including key witnesses, documentary and physical evidence, and located in the Virgin Islands. Plaintiffs assert that many of the factual witnesses, such as "Marina employees, customers and tenants of the Marina, banking officials having knowledge of the financial transactions in the Virgin Islands which" could not be compelled to travel to Delaware for trial. (ECF No. 38 at 16.) Plaintiffs further argue that if there is the need for the jury to view the Marina, they would not be able to do so from Delaware.

Taken as true, the complaint alleges many incidences that gave rise to the complaint occurred on St. Thomas. It is reasonable to expect key fact witnesses who can speak to these events would also be located on St. Thomas. Even if it were convenient for the parties themselves to travel to Delaware for the proceedings, it is no less convenient for them to travel to the Virgin Islands, where they conducted business for twenty years. Accordingly, the private interest factors weigh against dismissal.

With regard to the public interest factors, Defendants argue that "a state has 'a compelling interest in ensuring the consistent interpretations and enforcement of its

---

[11] Defendants support this argument in part by stating that the parties chose Delaware as their forum. However, as discussed above, this is premised upon the idea that the choice of law clause functions also as a binding forum selection clause based on an interpretation of Delaware law as having vested itself with exclusive jurisdiction unless contracts otherwise dictate. The Court disagrees.

corporation law.'" (ECF No. 32 at 12) (citing *In re Topps Co. S'holders Litig.*, 924 A.2d 951, 959 (Del. Ch. 2007)). Defendants assert that courts, as a general rule, should not assume jurisdiction over trials involving the internal affairs of a corporation that has been incorporated in another state. Therefore, as Defendants argue, the Virgin Islands is *forum non conveniens* and should decline to exercise jurisdiction over the Delaware law claims.

The internal affairs doctrine "is a . . . principle which recognizes that only one State should have authority to regulate a corporation's internal affairs, [i.e.,] matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders". *Edgar v. Mite Corp.*, 457 U.S. 624, 645 (1982). To support their contention that the doctrine requires foreign fora to decline jurisdiction over cases involving the internal affairs of Delaware corporations, Defendants cite *Rogers v. Guar. Tr. Co.*, 288 U.S. 123 (1933), in which the Supreme Court held:

> It has long been settled doctrine that a court -- state or federal -- sitting in one state will as a general rule decline to interfere with or control by injunction or otherwise the management of the internal affairs of a corporation organized under the laws of another state but will leave controversies as to such matters to the courts of the state of the domicile.

*Id.* at 124.

However, in *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947), the Supreme Court clarified this permissive language, stating that *Rogers* "holds only that the district court '. . . was free in the exercise of a sound discretion to decline to pass upon the merits of the controversy and to relegate plaintiff to an appropriate forum.'" *Id.* at 528 (citing *Rogers*, 288 U.S. at 124). The Court further held:

> There is no rule of law, moreover, which requires dismissal of a suitor from the forum on a mere showing that the trial will involve issues which relate to the internal affairs of a foreign corporation. That is one, but only one, factor which may show convenience of parties or witnesses, the appropriateness of trial in a forum familiar with the law of the corporation's domicile, and the enforceability of the remedy if one be granted. But the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice.
> *Id.* at 527.

It is definitively within the Courts discretion to hear these claims. Although it may be in Delaware's interest to decide cases under its laws at home, this Court is fully capable of

*Kissman, et al.  v. Ohno, et al.*
Case No. 3:18-cv-0018
Memorandum Opinion
Page 14 of 17

interpreting Delaware law. Furthermore, the Court does not find that it is an imposition on our local system to maintain this case. At this point in the litigation, it is far more convenient for the parties to remain in the Virgin Islands than to refile in Delaware. It is safe, therefore, to conclude that the public interests here at the very least do not favor a finding of *forum non conveniens*,

Therefore, balancing the public and private interests, and considering the adequacy of the alternative forum and the deference given to the Plaintiff's choice of forum, the Court finds that Defendants have failed to argue it would be in the interests of justice to dismiss this case and refile in Delaware. It is well within the Court's discretion to exercise jurisdiction over these claims, and, in the interests of justice, the Court will do so.

### C.  Transfer of Venue

Defendants finally argue that, in the alternative, the Court should transfer the venue of this action to Delaware pursuant to 28 U.S.C. § 1404(a). When considering a transfer of venue under Section 1404 the court undertakes an analysis functionally equivalent to that under *forum non conveniens*. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 60 (2013) ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system"). The burden is on the moving party to establish the need for transfer of venue. *Jumara,* 55 F.3d at 879. However, the burden on the moving party is less stringent when considering transfer of venue, as "[d]istrict courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of forum non conveniens." *Piper Aircraft*, 454 U.S. at 253. Nonetheless, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citations omitted) (internal quotation omitted).

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 21 U.S.C. § 1404(a). "[A] transfer is authorized by the statute only if the plaintiff had an 'unqualified right' to bring the action in the

transferee forum at the time of the commencement of the action." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970).

Once the court establishes that the proposed venue is proper, the Third Circuit Court of Appeals has instructed courts to consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted). Private interest factors that may be considered include:

> (1) "plaintiff's forum preference as manifested in the original choice;" (2) "the defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties as indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses;" and (6) "the location of books and records (limited to the extent that the files could not be produced in the alternative forum)."

*Consol. Props. v. Sherwin-Williams Co.*, No. 2017-13, 2018 U.S. Dist. LEXIS 166091, at *9-11 (D.V.I. Sep. 25, 2018) (quoting *Jumara*, 55 F.3d at 879). Public interest factors that may be considered include:

> (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases."

*Id.* (quoting *Jumara*, 55 F.3d at 879). It should be noted that there is "no definitive formula or list of the factors to consider . . . ." *Jumara*, 55 F.3d at 879.

When federal jurisdiction is founded solely on diversity of citizenship, 28 U.S.C. § 1391(b), venue is proper if a plaintiff brings the action in a district that is:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Here, the parties do not dispute that venue is proper in the District of Delaware. St. Thomas Marina is incorporated in Delaware with its principal place of business in Washington, and Defendants have stated that Ohno will consent to personal jurisdiction in Delaware.

Next, the Court must "balance all of the relevant factors and determine whether a transfer of venue would best serve all the private and public interests." *Kendricks v. Hertz Corp.*, 2008 U.S. Dist. LEXIS 62945 at *3 (D.V.I. 2008). As discussed, the Third Circuit has provided a list of potential factors to consider, however as the list is non-exhaustive and non-dispositive, the Court need only consider those factors which would best help the Court determine whether a transfer would be in the best interests of justice. Appropriately, the arguments for transfer of venue are closely related to those for dismissal under *forum non conveniens.* Defendants first argue that Plaintiffs' choice of venue should be given little weight, as no Plaintiff is a citizen of the Virgin Islands. Defendants argue that their choice of venue should be given more weight, as St. Thomas Marina is a Delaware Corporation, and therefore a citizen of Delaware, and three of the counts asserted are governed by Delaware law. Defendants assert here that the acts and omissions which gave rise to the non-Delaware Law Claims - tortious interference (Count I), breach of contract (Count II), and defamation (Count V) – occurred outside of the Virgin Islands. Specifically, Defendants argue that the actions that constituted the alleged negligence and willful misconduct would have occurred in Washington or, potentially, in Florida. Further, Defendants argue that the defamation claim does not specify where any allegedly defamatory statements were made, or to whom. Therefore, Defendants argue that none of Plaintiffs' claims arose in the Virgin Islands.

Furthermore, Defendants argue that it is no less convenient to litigate in Delaware than in the Virgin Islands, and question whether any material witnesses would live in the Virgin Islands and dispute that any books or records are located in the Virgin Islands.

With regard to the public interest factors, Defendants again argue that the local interest in deciding controversies brought under Delaware law at home, public policies of the fora, and the relative familiarity of the fora with Delaware law all favor the transfer of

venue. Finally, defendants argue that the remaining factors are neutral, as "none of the non-Delaware law claims appear to implicate the law of the Virgin Islands."

As discussed above, the Court finds that many of the acts or omissions that gave rise to the claims did, in fact, occur in the Virgin Islands. It is somewhat disingenuous to claim that any and all allegations related to a business operated out of the Virgin Islands for two decades could only have occurred in Washington or Florida. Taking material allegations in the complaint as true, many alleged events that pertain to all counts occurred in the Virgin Islands. Furthermore, Plaintiffs have asserted that several non-compulsory witnesses, many critical documents, and the Marina itself are all located on St. Thomas, in the Virgin Islands.

Acknowledging that the Marina is certainly located on St. Thomas, and assuming that other sources of proof are indeed located on St. Thomas, and the events that gave rise to the allegations occurred, at least in part, on St. Thomas, Defendants' arguments that the private interest factors favor Delaware all fail.  The Virgin Islands, as a venue, should be given considerable weight, and it would be significantly less convenient for the parties to litigate in Delaware. While it is true that local courts have an interest in deciding local controversies at home, this does not preclude other districts from appropriately interpreting and applying another state's laws. This Court has been tasked with considering questions of Delaware law in the past and is capable of doing so again.

Taken in concert, the private interest factors weigh in favor of the Virgin Islands. To the extent that some of public interest factors weigh in favor of transfer to the District Court of Delaware, those concerns are relatively minor. Furthermore, the inconvenience to the Plaintiffs outweighs any benefits of transfer. Therefore, because the Court cannot definitively state that the balance of convenience of the parties in favor of the Defendants, let alone "strongly" in their favor the Court should deny the motion to transfer. *Shutte*, 431 F.2d at 25.

## IV.    CONCLUSION

For the reasons stated above, the Court will deny Defendants motion to dismiss and to transfer venue. An appropriate Order follows.

**Dated:** March 30, 2024

*/s/ Robert A. Molloy*
**ROBERT A. MOLLOY**
**Chief Judge**