## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **DENNIS KISSMAN and MARINA MANAGEMENT SERVICES,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 3:18-cv-0018** |
| **ST. THOMAS MARINA CORPORATION and KOSEI OHNO,** | ) ) ) | |
| **Defendants,** | ) ) ) | |
| **and** | ) ) | |
| **CROWN BAY MARINA, L.P.,** | ) ) ) | |
| **Nominal Defendant.** | ) | |

**APPEARANCES:**

**LEE J. ROHN, ESQ.**
**RHEA LAWRENCE, ESQ.**
LEE J. ROHN & ASSOCIATES
ST. CROIX, U.S. VIRGIN ISLANDS
> *FOR PLAINTIFF AND COUNTER-DEFENDANTS DENNIS KISSMAN AND MARINA MANAGEMENT SERVICES*
> *FOR COUNTER-DEFENDANTS NANCY KISSMAN, JANE WHERREN, AND MARINA STAFFING, INC.*

**ADAM NICHOLAS MARINELLI, ESQ.**
**A.J. STONE, III, ESQ.**
LAW OFFICES OF BOLTNAGI PC
ST. THOMAS, U.S. VIRGIN ISLANDS
> *FOR DEFENDANTS ST. THOMAS MARINA CORPORATION, KOSEI OHNO, AND CROWN BAY MARINA, L.P.*
> *FOR COUNTER-PLAINTIFF CROWN BAY MARINA, L.P.*

### MEMORANDUM OPINION

**Robert A. Molloy,** *Chief Judge*

**THIS MATTER** came before the Court *sua sponte.* The Court considers whether

diversity jurisdiction is proper in light of the parties' positions regarding (1) claims asserted

on behalf of or against Crown Bay Marina, L.P ("CBM LP"), and (2) whether Plaintiff Dennis

Kissman ("Kissman") is a limited partner of CBM LP.[1] The Court held an omnibus hearing addressing all pending motions on June 5, 2025. Defendants presented Defendant Kosei Ohno ("Ohno") as a witness. For the reasons discussed below, the Court finds that it lacks diversity jurisdiction and will remand this case to the Superior Court of the Virgin Islands.

## I.    BACKGROUND

CBM LP is a Delaware limited partnership formed on February 2, 1998. (*See* ECF No. 1-2 at 1.) The CBM LP Partnership Agreement ("LP Agreement") is governed by Delaware law and specifically, the Delaware Revised Uniform Limited Partnership Act, 6 Del. C. § 17-1102. (*See* ECF No. 1-3 at 11, LP Agreement, §9.3.) The agreement provides that the term of the partnership "shall commence on the date of filing the certificate of limited partnership . . . and shall continue until Dec 31, 2047, unless sooner dissolved, wound up and terminated in accordance with Article VII [Dissolution]."[2] (*See* ECF 1-2 at 10, LP Agreement, Section 2.4.)

Both Plaintiff Kissman and Defendant Ohno were limited partners of CBM LP at the time of formation. (ECF Nos. 1-3.) CBM LP's sole General Partner is Defendant St. Thomas Marina Corporation ("STMC"). (ECF No. 1-1 ¶5.) Ohno is principal owner of STMC. *Id.* at ¶6.

### A.  *Management Contract*

In January 1998, CBM LP entered into a contract for management services with Marina Management Services, Inc. ("MMS"), "which term began" February 2, 1998.[3] (ECF No.

---

[1] The parties disagree as to whether Kissman remains a limited partner of CBM LP.

[2] *See* Article VII "Dissolution" (ECF No. 1-3 at 6.)

[3] The LP Agreement states that the "Contract for Management Services" between MMS and CBM LP was "dated January 29, 1998." (*See* ECF 1-3 at 9, LP Agreement.); The Complaint states that the contract between MMS and CBM LP was entered into by the parties prior to the "existence" of CBM LP." (*See* ECF 1-1 ¶¶9, 10, Compl.)

46 ¶10.) The management contract provided that MMS would manage the Crown Bay Marina in St. Thomas on behalf of CBM LP. (ECF Nos. 46 ¶4, 1-1 ¶4.) Kissman is president of MMS. (ECF No. 1-1 ¶49).

### B. *Call Option*

Article VIII of the LP Agreement—captioned "Transfer of Partner's Interest, Call Option"— states:

> In the event that the Contract for Management Services, dated January 29, 1998 . . . between the partnership and Marina Management Services Inc. is terminated in accordance with its terms for any reason, then the General Partner shall have the right and authority, but not the obligation, to cause the partnership to purchase all of the Limited Partner interests then held by Dennis P. Kissman and/or any of his permitted transferees (collectively, "Kissman") for the Call Price; provided, however, that such right must be exercised by the general Partner within 90 days after such termination."

LP Agreement § 8.3(a). (ECF No. 1-3 at 9.)

After the marina sustained hurricane damage in 2017, the relationship between Kissman and Ohno soured. According to Defendants, the management agreement was officially terminated on October 27, 2017. (ECF No. 46 ¶19.) On October 18, 2017, Ohno sent Kissman an email on behalf of CBM LP informing Kissman that the management agreement between MMS and CBM LP would terminate "for cause" on October 27, 2017. (ECF No. 12-2.) Then, on January 24, 2018, MMS was notified by letter that STMC, through Ohno, had exercised the call option in the LP Agreement. (ECF No. 12-4.) According to Defendants, Kissman ceased to be a limited partner with CBM LP at that point.

Plaintiffs, on the other hand, assert that "the services of MMS had effectively been terminated, at the earliest on October 6, 2017, and at the latest, October 18, 2017"[4] — outside the 90-day period required for the call option to be properly exercised. (ECF No. 1-1 ¶90.) Plaintiffs contend that because the call option exercised on January 24, 2018, was "outside the 90-day time period to do so," it was ineffective and therefore Kissman remains a limited partner of CBM LP. *Id.*

### C. Citizenship of the Parties

On February 22, 2018, Plaintiffs filed the instant action in the Superior Court of the Virgin Islands bringing direct claims against Defendants for tortious interference with contractual relations (Count One), breach of contract (Count Two), improper exercise of the call option (Count Three), access to CBM LP's financial records (Count Four), and defamation (Count Five). (ECF No. 1-1 ¶¶ 99–116.) In addition, Kissman asserted a derivative claim on behalf of CBM LP, alleging STMC's actions as general partner caused the partnership significant financial loss (Count Six). *Id.* at ¶¶ 117–122.

In response, on March 29, 2018, Ohno filed a Notice of Removal from the Superior Court to this Court for case number ST-18-cv-085. (*See generally* ECF No. 1.) Ohno asserted that this case was removable pursuant to 28 U.S.C. § 1332, "which provides federal district courts with original jurisdiction in cases where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." *Id.* at 1.

---

[4] Plaintiffs assert two different timeframes for when constructive termination of the management agreement occurred, however, both timeframes fall outside the requisite 90-day call option window. *See* ECF No. 1-1 ¶19 ("The General Partner terminated the agreement with MMS on October 8, 2017, and at the latest, October 18, 2017.").

Because CBM LP was named as a nominal defendant in the Complaint, Ohno asserted that CBM LP's citizenship should be disregarded "as it does not affect the Court's subject matter jurisdiction in this case." (ECF No. 1 ¶7.) Ohno also asserted that CBM LP consented to removal. *Id.* at ¶8. According to the Notice of Removal, citizenship for purposes of diversity jurisdiction is asserted as follows:

1. Plaintiff MMS is a Florida corporation with its principal place of business in St. Thomas, U.S. Virgin Islands. *Id.* at ¶3.

2. Plaintiff Kissman is a citizen of St. Thomas, U.S. Virgin Islands. *Id.* at ¶4.

3. Defendant STMC is a Delaware corporation with its principal place of business in Washington. *Id.* at ¶5.

4. Defendant Ohno is a citizen of Washington and a limited partner of CBM LP. *Id.* at ¶6.

Without CBM LP as a party in interest, diversity jurisdiction is plausible among all plaintiffs and defendants. (*See generally* ECF No. 1.) On May 31, 2018, Plaintiffs attempted to amend their Complaint in an effort to change CBM LP's status from a nominal party to a real party in interest and to remand the case to Superior Court.[5] (*See generally* ECF No. 6.) The Court denied Plaintiffs' motion.[6] (ECF No. 21.)[7]

In September 2019, Defendants filed counterclaims on behalf of CBM LP, (ECF No. 46 at 15), and on September 16, 2020, Defendants amended their counterclaims to include

---

[5] In its Memorandum Opinion filed on March 30, 2024, the Court stated that "at this time the parties do not dispute diversity of citizenship. . . ." (ECF No. 373 at 7.) However, Plaintiffs did raise a dispute to citizenship in Plaintiffs' Motion for Leave to File First Amended Complaint, and for Remand of the Case to the V.I. Superior Court for Lack of Subject Matter Jurisdiction, filed May 31, 2018. (ECF No. 6.)

[6] In a succinct text Order, the Court stated that "at a later date," it would "issue a memorandum opinion outlining the reasons for its decision"; however, no memorandum opinion was ever issued. (*See* ECF No. 21.)

[7] The undersigned's predecessor presided over this case up until April 2020. This matter was reassigned to the undersigned on May 7, 2020. (ECF No. 98.)

breach of contract (Count One); breach of duty of good faith and fair dealing (Count Two);

fraud (Count Three); unjust enrichment (Count Four); and intentional tort and negligence

(Count Five). (ECF No. 147-1.)

Defendants argue that citizenship of the parties has not changed since the date of

removal and "complete diversity remains intact" pursuant to 28 U.S.C. § 1332. (ECF No. 380

at 5.) Defendants maintain that Kissman is no longer a limited partner with CBM LP and as

such may not assert a derivative claim. In opposition, Plaintiffs argue that Kissman's

derivative claim is valid and that diversity jurisdiction is impossible given that CBM LP is

actually a real party plaintiff—despite being listed as a nominal party. (ECF No. 381 at 4.)

Plaintiffs maintain that as a limited partner of CBM LP, Kissman has standing to assert a

derivative claim on CBM LP's behalf, and as a real party in interest, CBM LP's citizenship in

the diversity analysis undermines diversity jurisdiction. *Id*. at 10.

### D.  *Report and Recommendation*

On April 2, 2024, the District Court entered an Order referring the issue of subject

matter jurisdiction and any issues relevant and necessary to determining subject matter

jurisdiction to the Magistrate Judge for a report and recommendation ("R&R"). (ECF No.

376.) The Court also ordered the parties to file respective memoranda for consideration as

to whether the Court has diversity jurisdiction. (ECF No. 378.) In her R&R issued on July 22,

2024, the Magistrate Judge found CBM LP to be "a real party to the controversy whose

presence destroys diversity," and recommended that this case be dismissed and remanded

to the Superior Court. (ECF No. 386 at 15.) Defendants then filed an objection to the R&R,

(ECF No. 390), and a motion requesting a hearing on the issue. (ECF No. 408.) On June 5,

2025, the Court held an omnibus hearing addressing all the parties' pending motions. During

the hearing, the Court heard final argument as to whether diversity jurisdiction exists between the parties.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(1)

### 1. Diversity Jurisdiction

"Jurisdiction based on diversity of citizenship requires that opposing parties be citizens of diverse states. Under the dictates of 28 U.S.C. § 1332(a), for diversity jurisdiction to exist, no plaintiff may be a citizen of the same state as any defendant, and the amount in controversy must exceed $75,000." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018)(citations omitted); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff.").

The party asserting diversity jurisdiction bears the burden of convincing the court by a preponderance of the evidence. *Doe v. Goldstein's Deli*, 82 F. App'x 773, 775 (3d Cir. 2003); *accord McCann v. George W. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993) (stating that the movant for diversity jurisdiction "bears the burden of showing "that the case is properly before the court at all stages of the litigation.").

Without subject matter jurisdiction the court does not have the power to hear the case. *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Because subject matter jurisdiction is central to a court's authority, a court can raise issues of subject matter jurisdiction *sua sponte* at any time. Fed. R. Civ. P. 12(h)(3). The Court has an absolute

duty to verify subject matter jurisdiction, and it must dismiss the action if it finds jurisdiction is lacking. *Id*. "The form of the inquiry is flexible though: 'As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court.'" *Id.* at 891 n.6 (citation omitted). "That the district court is free to determine facts relevant to its jurisdiction has long been clear." *Id.*

"[T]he absence of sufficient averments or of facts in the record showing such required diversity of citizenship is fatal and cannot be overlooked by the court, even if the parties fail to call attention to the defect.'" *Thomas v. Bd. of Trustees of Ohio State Univ.*, 195 U.S. 207, 211, (1904). "Citizens upon whose diversity a litigant grounds jurisdiction must be real and substantial parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980) (citation altered) (citation omitted). "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Id.* at 461. However, it is the Court that makes the decision, "not the parties by the parties' own determination of who are plaintiffs and who are defendants." *City of Indianapolis v. Chase Nat. Bank of New York*, 314 U.S. 63, 69 (1941); *see also* Wagstaffe Prac. Guide: Fed Civil Proc Before Trial § 7-IV ("One party's characterization of parties as 'plaintiffs' or 'defendants' for diversity purpose is not a 'fact,' . . . and the court may realign the parties to match their actual interests in the litigation. The citizenships once properly aligned determine whether complete diversity exists.").

### 2. Facial Challenge versus Factual Challenge

When evaluating a challenge to diversity jurisdiction in a Rule 12(b)(1) motion or a motion to remand, the Court "must determine whether the challenge is a facial attack or a factual attack." *GBForefront*, 888 F.3d at 35; *see also Byers v. Intuit, Inc.,* 564 F. Supp. 2d 385,

397 (E.D. Pa. 2008), *aff'd,* 600 F.3d 286 (3d Cir. 2010)("District courts have discretion to treat Rule 12(b)(1) motions as either facial or factual challenges to their subject matter jurisdiction."); *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939) ("As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court."). A facial challenge proceeds like a motion under Rule 12(b)(6), where the court accepts the allegations in the complaint as true. *Mortensen*, 549 F.2d at 891. In a factual challenge, the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

The movant "must assert facts that affirmatively and plausibly suggest" that he has the right he claims (here, the right to jurisdiction), "rather than facts that are merely consistent with such a right." *Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008) (citations omitted).

### 3. Citizenship of the Parties

Citizenship is synonymous with domicile. *McCann*, 458 F.3d at 286. While determined differently for individuals, corporations, and limited partnerships, most rules of citizenship are well established. "A natural person is deemed to be a citizen of the state where he is domiciled. A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015)(citations omitted). Unlike corporations, unincorporated associations such as a limited partnership are not considered citizens as that term is used in the diversity statute. *Id.* "Instead, the citizenship of partnerships and other unincorporated associations is determined by the citizenship of their partners or members." *Id.* at 105. For complete diversity to exist, all the members of a limited partnership must be diverse from all parties

on the opposing side. *Id.* When challenged on allegations of jurisdictional facts, all parties

must support their allegations "by competent proof." *Hertz Corp. at* 96-97.

For cases filed in state court and removed to federal court, jurisdiction is analyzed at

the time of removal. *See Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)

("The defendant's right to remove is to be determined according to the plaintiffs' pleading at

the time of the petition for removal."); *Pullman Co. v. Jenkins*, 305 U.S. 534, 535 (1939) ("The

right to remove an action from a state to a Federal court is to be determined according to the

plaintiff's pleading at the time of the petition for removal, without consideration of a

subsequently amended complaint.").[8]

### III.    DISCUSSION

Although the issue of diversity is raised *sua* sponte here, the Court nevertheless must

determine the appropriate standard to apply. The Third Circuit has instructed:

> A facial attack is an argument that considers a claim on its face and asserts that
> it is insufficient to invoke subject matter jurisdiction of the court because, for
> example, there is no indication of a diversity of citizenship among the parties.
> A factual attack, on the other hand, is an argument that there is no subject
> matter jurisdiction because the facts of the case do not support the asserted
> jurisdiction.

*GBForefront*, 888 F.3d at 35 (citation altered) (citation omitted); *see also Save Long Beach*

*Island v. U.S. Dep't of Com.,* 721 F. Supp. 3d 317, 330 (D.N.J. 2024) ("A facial attack concerns

an alleged pleading deficiency whereas a factual attack concerns the actual failure of a

---

[8]*Compare* 15A Moore's Federal Practice - Civil § 102.16 ("If a state-court case is removed to federal court, diversity generally must exist both when the state suit is filed and when the petition for removal is filed. However, there are exceptions to this rule."); *Chavez-Lavagnino v. Motivation Educ. Training*, 714 F.3d 1055, 1056–1057 (8th Cir. 2013) (case remanded for determination as to whether parties were completely diverse when suit was filed and when defendants filed notice of removal); *see also McNello v. John B. Kelly, Inc.*, 283 F.2d 96, 99 n.1. (3d Cir. 1960) ("Jurisdiction is to be tested as of the time of the filing of the suit.); *Field v. Volkswagenwerk AG*, 626 F.2d 293, 306 (3d Cir. 1980) (Normally, "jurisdiction is to be tested by the status of the parties at the commencement of the suit.").

plaintiff's claims to comport factually with the jurisdictional prerequisites.") (citation omitted); *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016) ("A facial attack challenges subject matter jurisdiction without disputing the facts alleged in the notice of removal . . . . A factual attack, in contrast, disputes the factual allegations underlying the assertion of jurisdiction and involves the presentation of competing facts.") (citation omitted).

The Court construes this issue as a facial attack on diversity jurisdiction.[9] Thus, the Court must consider whether Defendants' allegations in the Notice of Removal, attached documents, and referenced proceedings establish the necessary jurisdiction.

### A. Defendants fail to demonstrate diversity of citizenship of the parties.

#### 1. Notice of removal.

A notice of removal must allege the underlying facts supporting the requirements for removal jurisdiction, and because jurisdiction is attacked facially here, we construe the facts in the removal notice in the light most favorable to movants. *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 466 (3d

---

[9] Defendants rely on *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29 (3d Cir. 2018), as a basis to argue that this challenge is a factual challenge. Upon review, it is unclear to the Court how this case supports Defendants' argument. In *GBForefront*, both a factual and facial challenge were presented. *Id.* Similar to the instant matter, the facial attack in *GBForefront* was "that GBForefront never alleged the citizenship of the members of the LLC defendant entities" in its complaint. *Id.* at 35. Separately, the factual attack in *GBForefront* "ultimately came down to a question of law on how to determine the citizenship of certain trusts." *Id.* at 35 n.8. The Court in *GB Forefront* considered the legal question of whether the trusts at issue were of the traditional or business variety. *Id.* at 32. The factual challenge hinged "on the proper interpretation of [case law] in determining the citizenship of the several trusts that are layered within *GBForefront.*" *Id.* at 37. "Although the District Court had said that it was addressing a 'facial attack', the Court's analysis actually addressed the Defendants' factual attack because the Court considered information outside the pleadings, as agreed to by the parties." *Id.* at 35 n.8. Unlike *GBForefront*, the parties in the instant matter do not dispute how to determine citizenship for trusts or for any other entity involved for purposes of diversity jurisdiction, and the Court need not look outside the pleadings here. The Court questions Defendants' claim of diversity jurisdiction on its face.

Cir. 2015) ("*Defender Ass'n*"), cert. denied 136 S. Ct. 980 (2016); *accord Papp*, 842 F.3d at 811.

Defendants carry the burden to show the existence of federal jurisdiction, and here Defendants fail to meet this burden from the get-go. The citizenship of CBM LP is missing from Defendants' Notice of Removal. Through little fault of their own, Defendants apparently failed to adequately plead diversity of citizenship in their Notice of Removal because CBM LP was originally captioned as a "Nominal Defendant." Given that Defendants did not analyze CBM LP's citizenship for purposes of removal, Defendants failed to demonstrate diversity by a preponderance of the evidence.

Although CBM LP was originally captioned as a "Nominal Defendant" in the Complaint, the Court "must determine the propriety of the removal of a case only after it has realigned the parties according to their actual interests in the suit. The Court is not bound by the technical form of the state court proceeding but is obligated to ascertain the underlying substantive interests of the parties in dispute and arrange the parties according to their actual interest in the controversy." *Glenmede Tr. Co. v. Dow Chem. Co.*, 384 F. Supp. 423, 427-28 (E.D. Pa. 1974) (citations omitted) (holding to remand where a nominal party was determined by the court to be a necessary party and therefore a real party in interest; in so doing, diversity was destroyed). "Because the question as to whether a party is necessary to a proceeding is dispositive of the existence of federal jurisdiction, the question of the status of a particular party must be decided by applying federal law." *Id.* at 430. (citation omitted). Given that a cause of action is stated on CBM LP's behalf on both sides of the case, CBM LP

cannot be considered a nominal party.[10] *See Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 521 F. Supp. 1046, 1048 (S.D.N.Y. 1981) ("A party to an action is nominal or formal if no cause of action or claim for relief is or could be stated against him or on his behalf."); *Bumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767 (3d Cir. 1991) ("Nominal parties are generally those without a real interest in the litigation.").

A derivative claim is asserted on CBM LP's behalf in Count Six of the Complaint and Defendants assert a Counterclaim on CBM LP's behalf, as well. Given that action is stated on CBM LP's behalf, CBM LP is a real party in interest and its citizenship must be considered to determine whether complete diversity exists. *See Nomura Asset Capital v. Overland Co.*, No. 02-1604 GMS, 2003 U.S. Dist. LEXIS 28574, at *9 (D. Del. Jan. 8, 2003) (finding that, "[d]ue to the derivative nature of the plaintiff's claims, . . . the Partnership is more than a nominal party," and the court is thus required to consider its citizenship to determine diversity). As a limited liability partnership, the citizenship of each of CBM LP's members is relevant. *Carden v. Arkoma Associates*, 494 U.S. 185, 108 (1990) ("For diversity jurisdiction purposes, a limited partnership is considered a citizen of each state in which its partners are citizens.").

Both Kissman and Ohno are alleged as members of CBM LP in both the Complaint and at the time of removal. In addition, Defendant STMC is the general partner of CBM LP and therefore both have the same citizenship. (ECF No. 404 at 18.) By asserting a derivative claim (Count Six) on behalf of CBM LP against Defendant STMC, (and defendant Ohno), diversity is destroyed. As Plaintiffs assert, "[w]hatever domicile Defendant [STMC] has *is the same as* [CMB LP]. There cannot be diversity jurisdiction." *Id.*

---

[10] At the June 5, 2025, omnibus hearing Defendants conceded that CBM LP is a real party in interest.

### 2. *Citizenship of CBM LP is inconclusive.*

Looking into the record, the Court finds insufficient evidence that would demonstrate the citizenship of CBM LP. All parties must support their allegations of citizenship by competent proof. *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010). Even as of the June 5, 2025 hearing Defendants were unable to account for each of CBM LP's limited partners—some of which are trusts. *See Lincoln Benefit Life*, 800 F.3d at 105 n.16 ("[T]he citizenship of unincorporated associations must be traced through however many layers of partners or members there may be.") (citation omitted); *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1259 (3d Cir. 1977) ("When the rule of complete diversity is read in conjunction with the principle that the citizenship of a partnership depends upon that of its members, it becomes clear that diversity jurisdiction may not obtain unless all of the members of the plaintiff partnership are of distinct citizenship from all of the defendants.") (citation altered).

For diversity purposes, the citizenship of a trust is based on the citizenship of the trustees. *GBForefront,* 888 F.3d at 39. At the omnibus hearing, Ohno expressed uncertainty when testifying as to the identities of the CBM LP members representing the trusts. He stated names of law firms or attorneys but could not specify identities of specific trustees when questioned. He also asserted residency in New York for certain trustees, but residency is not the same as citizenship.[11] *See GBForefront,* 888 F.3d at 35 ("[R]esidency alone is insufficient to plead diversity of citizenship.")(citation omitted). As of the date of this order, Defendants

---

[11] It is possible to remedy this particular issue. *See GBForefront,* 888 F.3d at 41 (remanding to District Court with instructions to flesh out the citizenship of trustees in order to determine whether there is diversity jurisdiction).

have yet to demonstrate with competent proof the citizenship for *all* members of CBM LP for purposes of diversity jurisdiction.

### B. *The derivative claim.*

Turning to the Complaint, Plaintiff Kissman alleges a derivative claim on behalf of CBM LP in Count Six. Defendants contend that Count Six is not properly a derivative claim under Delaware law because Kissman allegedly was removed as a partner of CBM LP before he filed the Complaint and therefore lacks standing to assert a derivative claim.

A derivative action is defined as "a suit by a beneficiary of a fiduciary to enforce a right belonging to the fiduciary; esp., a suit asserted by a shareholder on the corporation's behalf against a third party (usu. a corporate officer) because of the corporation's failure to take some action against the third party." DERIVATIVE ACTION, Black's Law Dictionary (12th ed. 2024). In the context of a limited partnership, a partner may assert a derivative action on behalf of the partnership. "Derivative actions are one of the principal means of challenging improper, illegal, or unreasonable conduct by . . . management. Among the more common offenses charged in derivative actions are excessive salaries, issuance of stock without adequate consideration, diversion of corporate opportunity, misapplication of funds, improvident loans, and secret profits." DERIVATIVE ACTION, Black's Law Dictionary (12th ed. 2024) (citing to Judith Schemel Suelzle, *Trust Beneficiary Standing in Shareholder Derivative Actions*, 39 Stan. L. Rev. 267, 267–68 (1986)).

Given that CBM LP is organized pursuant to Delaware law and the LP Agreement was created under the Delaware Uniform Limited Partnership Act, Delaware law is the source of any cause of action the plaintiffs have for breach of contract or breach of fiduciary duty. (ECF

No. 390 at 5.) Therefore, Defendants assert, "the analysis of whether Count Six is a proper derivative claim must start with a preview of Delaware law." *Id.*

"In a derivative suit, a shareholder [or limited partner] sues on behalf of the corporation [or partnership] for harm done to the corporation [or partnership]. By contrast, a plaintiff bringing a direct action must be injured directly or independently of the corporation [or partnership.]" *Nomura Asset Capital,* 2003 U.S. Dist. LEXIS 28574, at *7 (citations and internal quotation marks omitted); *see also Kenworthy v. Hargrove*, 855 F. Supp. 101, 106 (E.D. Pa. 1994) (explaining that the determination hinges on "whether the primary injury alleged in the complaint is to the partnership or to the individual plaintiffs"); *Polak v. Kobayashi*, No. 05-330-SLR, 2008 U.S. Dist. LEXIS 92254, at *24 (D. Del. Nov. 13, 2008) ("Whether a claim is direct or derivative turns solely on who suffered the alleged harm and who would receive the benefit of any recovery or other remedy.") (citation omitted).

Under Delaware law, the plaintiff in a derivative action must be a partner or an assignee of a partnership interest at the time of bringing the action and:

> (1) At the time of the transaction of which the plaintiff complains; or
> (2) The plaintiff's status as a partner or an assignee of a partnership interest had devolved upon the plaintiff by operation of law or pursuant to the terms of the partnership agreement from a person who was a partner or an assignee of a partnership interest at the time of the transaction.

6 Del. C. § 17-1002.

Upon this premise, for Count Six to be interpreted as a proper derivative claim, Kissman must have been a limited partner at the time of filing and removal— "a condition precedent found wanting here" according to Defendants. *See* 6 Del. C. § 17-1002. (ECF No. 390 at 11.) However, Defendants carry the heavy burden of persuasion by a preponderance of the evidence that jurisdiction does in fact exist. At issue here is that Count Three of the

Complaint alleges that the call option removing Kissman as a limited partner was not properly exercised and therefore Kissman remained a limited partner and maintained the right to assert a derivative claim on behalf of CBM LP.

Defendants contend the facts of the case are at issue based on application of Delaware law. There is no question that the partnership agreement was organized under Delaware law. However, the rules for determining citizenship do not change depending on whether or not Delaware law applies. The rules defining jurisdictional citizenship of a party—whether individual, a Limited Partnership, or Corporation—are definitive. Even if jurisdiction was challenged upon a factual basis as Defendants attempted to assert at the omnibus hearing, "no presumptive truthfulness attaches" to Defendants' allegations, and "the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. "It is fundamental that federal courts must have subject matter jurisdiction before reaching the merits of a case, and as its name indicates, jurisdiction based on diversity of citizenship requires that opposing parties be citizens of diverse states." *GBForefront*, 888 F.3d at 34. Any argument concerning a lack of standing cannot first go to the merits of the claim. If it does, the movant has not met its burden for diversity jurisdiction.

Kissman's standing to assert a derivative claim is tied to the factual disputes arising from Count Three of the Complaint, which questions the merits of the call option that allegedly withdrew Kissman's membership in CBM LP. The parties dispute exactly when the management agreement was terminated, which is determinative of whether the call option was properly exercised. In the Complaint, Plaintiffs allege that constructive notice of

termination was given before the date of termination asserted by Defendants.[12] This boils

down to both factual and legal matters, and it is a merits question because Count Three of

Plaintiffs' complaint challenges the legality of the exercise of the call option.

The Court finds that Defendants do not sufficiently demonstrate that Kissman's

partnership rights with CBM LP had ceased by the time the Complaint was filed or when the

case was removed. It is undisputed that Kissman was a limited partner at the formation of

CBM LP. He was also a member at the time Plaintiffs allege that the Management Agreement

was constructively terminated. In addition, Kissman was a member at the time of the

disputed call option.[13] Defendants' assertions concerning the call option are disputed by

Plaintiffs, and none of the cases that Defendants proffer present a similar scenario.

To the extent that a challenge "bleeds into the merits of the case, the District Court

ought not address it in terms of jurisdiction." *Papp,* 842 F.3d at 811 n.4. The Third Circuit has

held that "a district court must take care not to reach the merits of a case when deciding a

Rule 12(b)(1) motion." *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016) (citation

omitted.) Even in a factual attack on jurisdiction, a district court may not decide genuinely

disputed facts where 'the question of jurisdiction is dependent on the resolution of factual

---

[12] Although the exact dates Plaintiffs assert for constructive termination vary, they all fall within a timeframe outside the 90-day call option window: "By instructing MMS to cease contacting vendors and others and to stop efforts to repair the marina, the contract of MMS was effectively terminated on October 6, 2018." (ECF No. 1-1 Compl. at ¶66.); "The General Partner terminated the agreement with MMS on October 8, 2017, and at the latest on October 18, 2017. (ECF No. 1-1 at ¶ 19.) "On October 16, 2018, Ohno, on behalf of the General Partner, removed MMS access to the bank accounts so that bills could not be paid. When Kissman asked Ohno if he had done this, he would not respond." (EFC No. 1-1¶67.)

[13] There is nothing in the record that indicates Kissman intentionally relinquished this "property right" that gives rise to his ability to sue derivatively. *See Urdan v. WR Capital Partners*, Ltd. Liab. Co., No. 2018-0343-JTL, 2019 Del. Ch. LEXIS 313, at *23 (Del. Ch. Aug. 19, 2019)("The right to sue derivatively is a property right associated with share ownership. When a share of stock is sold, the property rights associated with the shares pass to the buyer. Del. Code Ann. tit. 6, § 8-302(a).").

issues going to the merits.'" *Dalfio v. Orlansky-Wax, Ltd. Liab. Co.*, No. 21-56339, 2022 U.S. App. LEXIS 21470, at *3 (9th Cir. Aug. 3, 2022) (citation and internal quotation marks omitted).[14] "Whether a party has standing to bring claims and whether a party's claims are barred by an equitable defense are two separate questions, to be addressed on their own terms." *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 346 (3d Cir. 2001).

Defendants contend that the Court's interpretation of Count Six of the Complaint— "derivative or not—is a separate analysis entirely than its eventual adjudication of its merits." (ECF No. 390 at 11.) However, whether Kissman remains a limited partner is a question of state law that also goes to the merits of Count Six of the complaint. If argument to determine jurisdiction must first go to the merits of the claim, the movant has not met its burden for diversity jurisdiction. And if the Court is required to analyze the merits against the party asserting removal, all doubts must favor remand.

There is a presumption against removal jurisdiction in a suit originally filed in state court, and the Third Circuit has cautioned that courts should resolve all doubts against removal in favor of remand. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (citation omitted); *see also Abels v. State Farm Fire and Casualty Co.*, 770 F.2d 26, 29 (3d Cir. 1985) ("Because lack of jurisdiction would make any decree in a case void, and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand."); *Adorno Enters. Inc. v.*

---

[14] Here, jurisdiction is challenged facially as the allegations contained in the notice of removal are "insufficient on their face to invoke federal jurisdiction." *Dalfio v. Orlansky-Wax, Ltd. Liab. Co.*, No. 21-56339, 2022 U.S. App. LEXIS 21470, at *2 (9th Cir. Aug. 3, 2022).

*Kissman v. Ohno*
Case No. 3:18-cv-0018
Memorandum Opinion
Page **20** of **22**

*Federated Dep't Stores,* 629 F. Supp. 1565, 1573 (D.R.I. 1986) ("Any substantial doubts as to the propriety of removal must be resolved against the proponent of a federal forum.") (citation omitted). In other words, in a challenged removal case, the district court may retain jurisdiction "only where its authority to do so is clear. . .." *Id.* (citation omitted). Here, it is not certain to the Court that Kissman was removed as a limited partner of CMB LP, and the Court finds that Defendants have not demonstrated otherwise by a preponderance of evidence. Furthermore, the Court is not persuaded that it must entertain Kissman's standing as a "condition precedent" to its decision pertaining to jurisdiction.[15]

---

[15] As a separate basis for barring Plaintiffs' derivative claim under Delaware law, Defendants assert that Plaintiffs' Complaint fails to plead facts with particularity as to whether Kissman ever made an actual demand to STMC for taking alternative actions, stepping down, or rectifying the alleged harms, in accordance with 6 Del. C. § 17-1003. (ECF No. 390 at 12.) Pursuant to 6 Del. C. § 17-1003, "[i]n a derivative action, the complaint shall set forth with particularity the effort, if any, of the plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort." If a plaintiff should fail to make a demand, it must show that making such a demand would be futile. *In re Cognizant Tech. Sols. Corp. Derivative Litig.,* 101 F.4th 250, 257 (3d Cir. 2024). In drawing all reasonable inferences from the pleadings in the instant matter, the Court finds that if a demand had been made it would likely have been futile considering that Ohno was in the process of cancelling Kissman's membership and essentially kicking him out of CBM LP. Delaware law governs the substantive requirements of Plaintiff's claim of demand futility. *Akhil Gupta, Derivatively v. Wilkinson,* 594 F. Supp. 3d 606, 610 (D. Del. 2022). "Corporate standards apply to limited partnerships in the demand excused analysis, and demand futility issues in the partnership context are the same as in the corporate context. Thus, where a limited partner sues a general partner derivatively because the general partner failed to do something, the test for demand excusal is whether or not the particularized factual allegations of the derivative complaint create a reasonable doubt that, as of the time the complaint is filed, the general partner could have properly exercised its independent and disinterested business judgment in responding to a demand." *Wenske v. Blue Bell Creameries,* Inc., No. 2017-0699-JRS, 2018 Del. Ch. LEXIS 221, at *1 (Del. Ch. July 6, 2018). "Under Delaware law, pre-suit demand requirement for a shareholder derivative action is futile if a majority of the directors who comprise the board either: (1) received a material personal benefit from the alleged misconduct that is the subject of the litigation demand; (2) faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; or (3) lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand." *In re Cognizant Tech.* at 257. Plaintiffs here sufficiently argued that pleading requirements were properly met and that "[i]t would be futile to request the General Partner of Crown Bay Marina Limited Partnership to bring the action against itself." (ECF No. 404 at 16.) The Complaint itself averred the futility of making any demand. (*See* No.1-1 ¶120.) To the extent that Ohno faced a substantial likelihood of liability on the claims that would be the subject of any demand made in a derivative action in the instant matter, the demand rule asserted does not survive for purposes of determining diversity jurisdiction. Plaintiffs further argue that Defendants' argument should be "waived for failing to raise it before the Magistrate Judge." (ECF No. 404 at 17.) Given the circumstances on the record of the parties' relationships and given that Defendant Ohno is principal owner of STM — and STMC is the General Partner of CBM LP—it is not a far stretch to accept that efforts by Kissman to make a demand would likely have been futile. (*See* ECF Nos. 1-1 ¶7, 46 ¶7.)

Even after removal to federal court, Defendants still carry the "heavy burden of persuasion," by a preponderance of the evidence that jurisdiction does in fact exist. *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010, 1012 n.6 (3d Cir. 1987) (citation omitted). *See, e.g. Hillman v. Hillman*, 903 A.2d 798 (Del. Ch. 2006) (finding that the formal general partner plaintiff of a limited partnership lacked standing as a limited partner under 6 Del. C. § 17-1001 and 6 Del. C. § 17-1002 because the terms of the limited partnership agreement clearly deprived him of any options to become a limited partner after having been removed as general partner). Here, Defendants provide no basis for their stance other than Delaware law and allegations.[16] Based on the record, the Court finds Kissman's derivative claim may stand.

---

[16] Defendants do not deny that CBM LP "clearly has an interest in this case" and concede that Kissman has the right to bring an action against the general partner for willful misconduct under CBM LP's partnership agreement; however, Defendants assert interpretation of the claim as derivative in nature "is neither required nor appropriate under Delaware law." (ECF No. 390 at 8.) For support, Defendants cite to *HB Gen. Corp. v. Manchester Partners*, 95 F.3d 1185, 1190 (3d Cir. 1996). *HB* is unpersuasive. Unlike the instant matter, all of the partners within the small, limited partnership in *HB*. were before the district court, and therefore the Court found the Partnership was not required as a party. It held that the Partnership was properly represented, and concluded that, "given proper protective provisions in the judgment, proceeding in the absence of the Partnership will cause no prejudice; that the Partnership is effectively represented by the partners and consequently suffers no prejudice from its exclusion; and that whether or not the plaintiffs' claims are 'derivative' is immaterial." *Id.* at 1188. In the instant matter, CBM LP's members are not all before the court as in *HB*.

Defendants also cite to *McClune v. Shamah*, 593 F.2d 482 (3d Cir. 1979). *McClune* is equally unpersuasive. The decision in *McClune* was based on requirements of Fed. R. Civ. P. 24(a), of which the limited partnership ("LP") in *McClune* did not meet. The Court in *McClune* found that, in addition to lacking the requisite criteria necessary to intervene as a party plaintiff, the LP's interests were already adequately represented by existing parties in the suit and "the disposition of the case would not impede [the LP] from asserting the same claims in a separate lawsuit because the claims they asserted belonged solely to the defendant LP and did not belong to the individual limited partners. *Id.* at 484-86. See also *McKay v. Heyison*, 614 F.2d 899, 907 (3d Cir. 1980) (noting "that the decision in *McClune* merely upheld a denial by the district court of a motion for intervention of right and permissive intervention and did not hold that permissive intervention could not have been permitted by the district court as a matter of law. . . .. A court *has discretion* to treat the pleading of an intervenor as a separate action in order that it might adjudicate the claims raised by the intervenor. . .. This discretionary procedure is properly utilized in a case in which it appears that the intervenor has a separate and independent basis for jurisdiction and in which failure to adjudicate the claim will result only in unnecessary delay.") (citations omitted) (emphasis added). *McClune* is distinguishable from the instant matter because requirements of Fed. R. Civ. P. 24 are not at issue here, and the Court does not find that CBM LP's interests are already adequately represented by existing parties in the suit as in *McClune*.

*Kissman v. Ohno*
Case No. 3:18-cv-0018
Memorandum Opinion
Page **22** of **22**

## IV.     CONCLUSION

For the reasons stated above, the Court finds that it lacks diversity jurisdiction in this matter. Accordingly, the Court will remand this case to the Superior Court of the Virgin Islands. An appropriate Order follows.

**Dated:** September 29, 2025                    */s/ Robert A. Molloy*
                                            **ROBERT A. MOLLOY**
                                            **Chief Judge**

---

Defendants also cite to *Kenworthy v. Hargrove*, 855 F. Supp. 101 (E.D. Pa. 1994), where the court found it was reasonable to restrict limited partners from bringing direct claims on behalf of the partnership when the general partners were already participating in the same litigation for the same alleged breaches. The Court finds *Kenworthy*, too, is unpersuasive. In *Kenworthy*, the Partnership was a private bank that had been seized by the state. The claims alleged injury to the limited partnership Private Bank, rather than to the limited partners individually. *Id.* at 106. The lawsuit arose out of the seizure of the Private Bank, which was the action taken directly against the interests of the Private Bank and not the individual limited partners. *Id.* at 107. None of the harm for which the limited partner plaintiffs sought redress in their Complaint—with the exception of damages alleged in a fraudulent misrepresentation count—existed independently of the limited partnership or were inflicted directly upon the limited partners. As such, the limited partners had "standing to sue only derivatively on behalf of the Private Bank." *Id.* In the instant matter, Kissman's derivative claim on CBM LP's behalf is properly asserted as the alleged injury was inflicted upon the partnership and not upon Kissman directly.